**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALICIA NARANJO GARCIA,<br>*Petitioner*,<br><br>v.<br><br>ROBERT M. WILKINSON, Acting<br>Attorney General,<br>*Respondent*. | No. 19-72803<br><br>Agency No.<br>A215-670-558<br><br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 16, 2020
Seattle, Washington

Filed February 18, 2021

Before: Ronald M. Gould and Michelle T. Friedland,
Circuit Judges, and Stephen R. Bough,[*] District Judge.

Opinion by Judge Gould

---

[*] The Honorable Stephen R. Bough, United States District Judge for
the Western District of Missouri, sitting by designation.

**SUMMARY**[**]

**Immigration**

Granting in part Alicia Naranjo Garcia's petition for review of the Board of Immigration Appeals' decision affirming an immigration judge's denial of asylum, withholding of removal, and protection under the Convention Against Torture, and remanding, the panel concluded that substantial evidence did not support the Board's determination that Garcia was not persecuted on account of her membership in social groups comprised of her family or property owners.

As an initial matter, because the Board assumed without explicitly deciding that Garcia's social groups comprised of her family or property owners were cognizable, the panel assumed for the sake of argument that both social groups were cognizable.

The panel held that the Board erred in concluding that Garcia failed to establish a nexus between her persecution and her status as a property owner. The panel explained that it read the Board's decision as recognizing that property ownership was a cause—and moreover, the real reason—Garcia was targeted, but still found that she was not targeted "on account of" property ownership. The panel wrote that under this court's case law, it is sufficient under mixed-motive precedent for the petitioner to show that a protected ground was a cause of the persecutors' acts.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the Board also erred in its analysis of nexus based on Garcia's family association.  Observing that there is a fine line between showing "animus" toward family, which does establish nexus, and "purely personal retribution," which does not, the panel wrote that the Board's analysis of this issue ignored pertinent and uncontroverted evidence.  The panel wrote that sweeping retaliation towards a family unit over time, such as was the case here, can demonstrate a kind of "animus" distinct from "purely personal retribution."  The panel explained that such targeting is sufficient to demonstrate nexus if the petitioner shows via uncontradicted testimony that persecutors specifically sought out the particular social group of family.

The panel remanded for the agency to clarify its asylum nexus determination, and to analyze in the first instance whether Garcia's property ownership or family membership are cognizable social groups in this context, and whether the other elements of Garcia's asylum claim were satisfied.  The panel also remanded Garcia's withholding claim because the Board's decision was inconsistent with any serious analysis of the difference between the "one central reason" nexus standard for asylum relief, and the "a reason" standard for withholding relief.

The panel held that substantial evidence supported the Board's denial of CAT protection because Garcia failed to establish a clear probability of being tortured if returned to Mexico.

**COUNSEL**

Sarah A. Nelson (argued), Certified Law Student; Thomas V. Burch and Anna W. Howard, Supervising Attorneys; University of Georgia School of Law, Athens, Georgia, for Petitioner.

Jessica D. Strokus (argued), Trial Attorney; Anthony C. Payne, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

GOULD, Circuit Judge:

Alicia Naranjo Garcia ("Garcia") is a native and citizen of Mexico. Garcia petitions for review of the Board of Immigration Appeals ("BIA") decision affirming the Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The Knights Templar, a local drug cartel, murdered Garcia's husband, twice threatened her life, and forcibly took her property in retaliation for helping her son escape recruitment by fleeing to the United States. We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition in part and remand.

**I**

In 2012, while Garcia was living in Apatzingán, Michoacán, Mexico, members of the Knights Templar drug cartel ("the Templars") kidnapped her husband. The cartel sought property Garcia's husband had inherited from his

parents. The cartel kept him for two days, letting him go when he agreed to turn over the deed to a house he owned in Apatzingán, which was different from the house in which he and Garcia lived. One month later, after Garcia's husband had already turned the property over, he was found dead from a gunshot at the base of his skull with his body left near the home that he and Garcia shared. Garcia told police officers about her husband's property dispute with the cartel.

Garcia spoke at her husband's funeral, asserting that the Templars were responsible for his death. A local cartel leader then "called [her] out and told [her] not to be saying" that the Templars killed her husband, that what was at stake was her and her children's well-being, and implied that if she did not say anything they would "let [her] live there in peace." For the next five-and-a-half years, Garcia said nothing, and the Templars did not "bother" her. The police never arrested anyone in connection with Garcia's husband's death.

Garcia has two children, both of whom are United States citizens and live in the United States.[1] In August 2017, Garcia's 18-year-old son went to Mexico to visit her. In February 2018, cartel members targeted Garcia again when they tried to recruit her son into the Templar ranks after finding out that he was in Mexico. Garcia learned of the cartel's recruitment efforts and helped him to escape by buying a plane ticket for him to return to the United States. Shortly thereafter, on April 25, 2018, two cartel members came to Garcia's family home to tell her that she "only had a month to leave." From experience with the cartels, Garcia

---

[1] Garcia and her husband previously entered the United States without inspection in 1997. She left and returned to Mexico in 2005. Her two children were born in the United States during that period.

knew that if she disobeyed, cartel members would kill her. The cartel members told her that "once [she] left, they would keep the property," referring to the house in which she was currently living. In response to the cartel's threats, Garcia left Mexico on May 13, 2018. She knew that when the cartel says they are going to take property, "they just say it, and then they keep it." Garcia did not report the Templars' threat to the police because she thought the Templars would find out and she feared what would happen if they did.

Garcia entered the United States on May 21, 2018. On June 20, 2018, the Department of Homeland Security initiated removal proceedings by filing a Notice to Appear ("NTA") in immigration court, charging Garcia with inadmissibility under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). On July 17, 2018, Garcia appeared before an immigration judge ("IJ") and conceded the allegations in the NTA. The IJ sustained the charge of inadmissibility. On August 16, 2018, Garcia submitted an I-589, Application for Asylum and for Withholding of Removal.

On September 28, 2018, Garcia appeared *pro se* before an IJ for an individual hearing on the merits of her application. Garcia testified to the Templars' role in her husband's murder, her son's fleeing to the United States, and the loss of her family's property. Garcia also testified that she did not feel she would be safe anywhere else in Mexico because of the Templars' threats. She has no family in Mexico outside of Michoacán and her children all live in the United States. She testified that she did not believe she could live with her parents in Michoacán, the area where she previously lived and her husband was killed, because if she went "to live with them, then [the Templars are] going to start taking it out on [her parents] too." When asked if she

could live in Mexico City, Garcia stated that she didn't know, but would be "scared," and that "[w]herever you go, right away [the Templars] find out."

When asked about other family members, Garcia testified that her brother, Pedro Naranjo Garcia ("Pedro"), had worked for the Templars and was currently incarcerated in Morelia, Michoacán, Mexico. At the time, Garcia believed Pedro had served three years of what she thinks is a 45-year sentence. The record does not specify for what crime Pedro was convicted. Garcia also testified that she has a nephew who was killed by an unknown assailant on December 9, 2009.

Despite finding Garcia's testimony credible, the IJ denied her any relief. The IJ said: "Whether specifically mentioned or not, the court has considered all of the testimony and documentary evidence contained in the application in this decision." The IJ incorporated by reference an addendum of law discussing the relevant legal standards for asylum, withholding of removal, and CAT protection.

The IJ found that two events to which Garcia testified qualified as persecution: (1) the Templars' 2012 death threat after her husband's funeral, when combined with her husband's murder; and (2) the cartel's 2018 threats in connection with leaving her home. But even though Garcia demonstrated past persecution, the IJ denied relief because the IJ concluded that these threats were not made "on account of" any protected ground. Instead, the IJ found that the cartel persecuted Garcia because it "wanted either her property or . . . found an excuse by her son's defiance of the recruitment over him to also get rid of [her] and displace her from her property." The IJ noted that Garcia, proceeding *pro se*, "did not claim membership in a particular social group,"

and that she provided insufficient testimony or evidence that she was threatened "because she was a family member of her husband." Also, the IJ determined that Garcia could not show that Mexican governmental officials were unable or unwilling to control the cartel. As a result, the IJ decided that Garcia was not entitled to a presumption of future persecution.

Without that presumption, the IJ then found that Garcia's fear of future persecution was subjectively, but not objectively, reasonable. In so deciding, the IJ noted that Garcia did not report the 2012 and 2018 death threats to the police, and she did not show that it would be unreasonable for her to relocate elsewhere within Mexico. Because of that, the IJ denied Garcia's asylum application. The IJ also denied Garcia's withholding of removal claim, finding that because she did not meet the threshold showing for asylum, she could not have met "the more stringent requirement for withholding." Finally, the IJ denied Garcia's CAT application, finding that she was unable to show it was more likely than not that she will be tortured in Mexico, because the Mexican government "fights corruption" and "was able to apprehend at least one cartel member and sentence him for 45 years as evidenced by the case of her own brother."

Garcia timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). Garcia, who was represented by counsel in that appeal, contended that she was persecuted on account of her membership in social groups consisting of (1) her family and (2) property owners. The BIA accepted for the sake of argument that these were cognizable social groups but nonetheless affirmed the IJ's determinations on Garcia's asylum, withholding, and CAT claims. The BIA reasoned as follows:

First, the BIA denied Garcia's asylum claim solely on the nexus ground, holding that she was not persecuted "on account of" any protected ground.  The BIA stated that it would "express no opinion" about the IJ's other reasons for denying this relief.  Second, the BIA denied her withholding of removal claim, stating that: "As [Garcia] did not satisfy the lower standard of proof for asylum, it necessarily follows that she did not satisfy the more stringent standard for withholding of removal."  The BIA rejected Garcia's contention that the IJ's analysis of this issue was too cursory or used the wrong legal standard, noting that the addendum of law the IJ incorporated into her oral decision explicitly recognized the difference in the nexus inquiry between asylum and withholding of removal ("one central reason" as opposed to "a reason," respectively).  Third, and finally, the BIA denied Garcia's request for CAT relief by concluding that the IJ "did not clearly err in predicting the likelihood of [Garcia's] future torture in Mexico, even considering the prior threats."

This timely petition for review followed.

## II

Because the BIA conducted a *de novo* review of the IJ's decision, our review is "limited to the BIA's decision except to the extent that the IJ's opinion is expressly adopted [by the BIA]." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (citation omitted).  "Where, as here, the BIA has reviewed the IJ's decision and incorporated portions of it as its own, we treat the incorporated parts of the IJ's decision as the BIA's." *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002).  In reviewing the BIA's decisions, we consider only the grounds relied upon by that agency.  "If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide

any issues remaining in the case." *Regalado-Escobar v. Holder*, 717 F.3d 724, 729 (9th Cir. 2013) (citation omitted).

We examine the BIA's "legal conclusions de novo and its factual findings for substantial evidence." *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc) (citations omitted).[2] Substantial evidence review means that the BIA's determinations will be upheld "if the decision is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Zhao v. Mukasey*, 540 F.3d 1027, 1029 (9th Cir. 2008) (quotation marks and citation omitted). We may only reverse the agency's determination where "the evidence compels a contrary conclusion from that adopted by the BIA." *Afriyie v. Holder*, 613 F.3d 924, 931 (9th Cir. 2010). "While this standard is deferential, 'deference does not mean blindness.'" *Parada v. Sessions*, 902 F.3d 901, 909 (9th Cir.

---

[2] Garcia argues that the BIA's asylum and withholding of removal determinations should be reviewed *de novo*. Although we typically review these determinations for substantial evidence, there is support in our cases for Garcia's position that *de novo* review applies here. When an applicant is deemed credible, we have considered nexus issues to be questions of law entitled to *de novo* review. *See Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir. 1995) (reviewing *de novo* the BIA's decision that the petitioner was not persecuted "on account of" imputed political opinion when the IJ made a favorable credibility finding), *superseded by statute on other grounds as stated by Parussimova v. Mukasey*, 555 F.3d 734, 739–40 (9th Cir. 2009); *see also Baghdasaryan v. Holder*, 592 F.3d 1018, 1022 n.4 (9th Cir. 2010) (citing *Singh v. Ilchert* for the proposition that nexus issues have been reviewed *de novo* when the applicant is deemed credible but declining to decide the issue). Because Garcia's petition for review should be granted as to her asylum and withholding claims under either standard, it is unnecessary to reach the issue of whether we review those determinations *de novo* or for substantial evidence.

2018) (quoting *Li v. Ashcroft*, 356 F.3d 1153, 1158 (9th Cir. 2004) (en banc)).

## III

As a removable noncitizen, Garcia bears the burden of demonstrating asylum eligibility by showing that she is a refugee within the meaning of the Immigration & Nationality Act ("INA").  INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a).  A "refugee" is defined as any person who is unwilling or unable to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The applicant must demonstrate a nexus between her past or feared harm and a protected ground.  *Barajas-Romero v. Lynch*, 846 F.3d 351, 359–60 (9th Cir. 2017).  Specifically, the protected characteristic must be "a central reason" for the past or feared harm.  *Id.*  If the applicant can demonstrate past persecution by showing persecution and nexus, a rebuttable presumption arises that she has a well-founded fear of future persecution.  8 C.F.R. § 1208.13(b)(1).  An applicant who has not shown past persecution may still qualify for asylum if she can show her claimed fear of future persecution is both "subjectively genuine" and "objectively reasonable."  *Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007) (en banc).

The BIA did not disturb the IJ's finding that Garcia is credible.  Accordingly, we view her as credible and must accept Garcia's testimony as true.  *See Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004) ("Testimony must be accepted as true in the absence of an explicit adverse credibility finding.").  The BIA also did not disagree with the IJ's determination that the Templars' death threats in

2012 and 2018, when combined with Garcia's husband's murder, qualified as persecution.  But the IJ concluded that Garcia did not prove past persecution because the threats were not made "on account of" any protected ground, thereby precluding Garcia from taking advantage of a rebuttable presumption that she has a well-founded fear of future persecution.  On appeal, the BIA accepted for the sake of argument that family membership and property ownership were cognizable social groups, but the BIA denied Garcia's asylum claim by affirming the IJ's decision that she was not persecuted "on account of" any protected ground.  The BIA declined to express an opinion about the IJ's other reasons for denying asylum.  Because we may consider only the grounds relied upon by that agency, *Regalado-Escobar*, 717 F.3d at 729, this petition for review turns primarily on the issue of nexus.

## A

We first conclude that substantial evidence does not support the BIA's conclusion that Garcia was not persecuted "on account of" her membership in a particular social group.

Garcia contends that she is a member of two particular social groups: family association and property ownership. The BIA assumed without explicitly deciding that these two groups are cognizable protected grounds.  The BIA then determined that, even if Garcia's alleged groups were cognizable, she had failed to establish a nexus.  Because we are bound to consider "only the grounds relied upon by th[e] agency," we also assume for the sake of argument that these are both cognizable social groups for purposes of evaluating the BIA's nexus determination.  *Regalado-Escobar*, 717 F.3d at 729.

If removed to Mexico, Garcia fears she will be persecuted on account of family association and property ownership. To prevail, Garcia must show that either family association or property ownership was "one central reason" for the persecution she experienced. *See* 8 U.S.C. § 1158(b)(1)(B)(i). That issue is not simple because of the possibility of mixed motives: "People, including persecutors, often have mixed motives." *Barajas-Romero*, 846 F.3d at 357. Our mixed-motive cases make clear that the petitioner need not show that the protected ground was the *only* reason for persecution. *See Parussimova v. Mukasey*, 555 F.3d 734, 742 (9th Cir. 2009) (recognizing that "persecutors are hardly likely to submit declarations explaining exactly what motivated them to act" (citation omitted)). We explained further:

> [A] motive is a "central reason" if the persecutor would not have harmed the applicant if such motive did not exist. Likewise, a motive is a "central reason" if that motive, standing alone, would have led the persecutor to harm the applicant. . . . [P]ersecution may be caused by more than one central reason, and an asylum applicant need not prove which reason was dominant. Nevertheless, to demonstrate that a protected ground was "at least one central reason" for persecution, an applicant must prove that such ground was a cause of the persecutors' acts.

*Id.* at 741.

The source of Garcia's feared persecution is the Templars drug cartel. An applicant's uncontroverted

credible testimony as to the persecutor's motive may be sufficient to establish nexus. *See, e.g.*, *Parada v. Sessions*, 902 F.3d 901, 910 (9th Cir. 2018) (petitioner's credible testimony established that the persecution he and his family suffered was "on account of" his family's government and military service). In this case, the evidence submitted by Garcia was compelling. Garcia credibly testified that the Templars killed her husband even after he had handed over his property, threatened her and her children when she spoke out about her husband's murder, tried to recruit her son into its ranks, ordered her to leave when she helped her son escape, threatened to harm her if she did not leave within one month, and told her the cartel would keep her property when she left.

On all of these important points, the BIA accepted Garcia's credible testimony and even agreed with the IJ that Garcia was targeted because the cartel either (1) "wanted to obtain [her family] properties as part of their criminal scheme," or (2) "found an excuse by her son's defiance of the recruitment over him to also get rid of [Garcia] and displace her from her property." As we read its decision, the BIA recognized that property ownership was a cause—and moreover, the real reason—Garcia was targeted, but it still found that she was not targeted "on account of" property ownership. But to the contrary, under our case law, it is sufficient under our mixed-motive precedent for the petitioner to show that a protected ground "was a cause of the persecutors' acts." *See Parussimova*, 555 F.3d at 741. Because the BIA concluded that Garcia failed to establish a nexus between her persecution and her status as a property owner despite acknowledging the ways in which Garcia's property ownership played an important role in her persecution, we hold that the BIA erred in its nexus analysis. We remand for the agency to clarify its decision and to

analyze in the first instance whether property ownership is a cognizable social group in this context, and whether the other elements of Garcia's asylum claim are satisfied.

**B**

The BIA's analysis of whether Garcia was persecuted on account of family association was also flawed.  Again, the BIA assumed that family membership was a cognizable protected ground.  The BIA's decision acknowledges that if Garcia had shown evidence of "animus" towards her family, then she would have demonstrated nexus to a protected ground.  Agreeing with the BIA, the Government argues that neither personal retribution nor being a family member of an individual who resisted gang recruitment establishes nexus. *See Molina-Morales v. INS*, 237 F.3d 1048, 1052 (9th Cir. 2001) (finding that "[p]urely personal retribution" is not persecution "on account of" a protected ground); *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1092–93 (9th Cir. 2013) (noting that general opposition to gangs and gang recruitment are not protected grounds).  True enough, but the line between "animus" (providing nexus) and "purely personal retribution" (no nexus) is a fine one, and the BIA's analysis ignores pertinent and uncontroverted evidence.

Our decision in *Parada v. Sessions*—concluding that substantial evidence did not support the BIA's determination that Quiroz Parada was not persecuted "on account of" family association—is instructive.  *See* 902 F.3d at 910. Quiroz Parada or members of his family had experienced murder, physical assault, home invasions, and specific death threats.  *Id.* at 909.  We held that the BIA's "glib characterization" of Quiroz Parada's experience as "threats against his family and attempt[s] to recruit him" was insufficient to explain a finding of no nexus to family association because Quiroz Parada's "credible testimony"

had established that members of a guerrilla political party, FMLN, "specifically sought out the 'particular social group' of his family." *Id.* at 909–10. It was "immaterial" that the FMLN's attempts to conscript Quiroz Parada would have served the "dual goals" of pursuing their political objectives "and of retaliating against the Quiroz Parada family" because "the latter is a protected ground, even if the former is not." *Id.* at 911*; see also Salgado-Sosa v. Sessions*, 882 F.3d 451, 458 (4th Cir. 2018) (concluding that petitioner's kinship ties were a central reason for the harm he feared, and also concluding that "the IJ and BIA erred by focusing narrowly on the 'immediate trigger' for MS-13's assaults—greed or revenge—at the expense of . . . the very relationships that prompted the asserted persecution").

Garcia or members of her family similarly have experienced murder, specific death threats, forcible taking of property, attempted conscription, and retaliation for failed conscription. Furthermore, the timing of the persecution and statements by the persecutor may constitute circumstantial evidence of motive. *See Deloso v. Ashcroft*, 393 F.3d 858, 865–66 (9th Cir. 2005) (timing); *Gafoor v. INS*, 231 F.3d 645, 651–52 (9th Cir. 2000) (persecutor statements), *superseded by statute on other grounds as stated by Parussimova*, 555 F.3d at 739–40. The cartel in part targeted Garcia's husband to obtain his property, but Garcia's husband was still killed even after he had turned over the property deed, which suggests the cartel may have targeted him for reasons beyond the possibility of stealing his property. Beyond that, the cartel then sought out Garcia at her husband's funeral, a uniquely family affair, threatening her so that she would remain silent about his death. *Parada*, 902 F.3d at 910. The cartel sought out Garcia once again after she helped her son escape to the United States to avoid the Templars' recruitment efforts. In this coercive effort, the

Templars forced her from her home and took her property. *Parada* indicates that such sweeping retaliation towards a family unit over time can demonstrate a kind of animus distinct from "purely personal retribution." *See id.* This kind of targeting is sufficient to demonstrate nexus if the petitioner shows via uncontradicted testimony that persecutors "specifically sought out the 'particular social group' of his family." *Id.* We therefore conclude that the BIA erred in its nexus analysis, and we remand for the agency to clarify its decision and to analyze in the first instance whether Garcia's family membership is a cognizable social group in this context, and whether the other elements of Garcia's asylum claim are satisfied. *See Baghdasaryan v. Holder*, 592 F.3d 1018, 1023, 1025–26 (9th Cir. 2010) (holding the BIA erred in holding that petitioner had failed to establish nexus where it "ignored" concrete evidence that a protected ground motivated the petitioner's persecution).

## IV

We next conclude that the BIA erred in its analysis of Garcia's withholding of removal claim by erroneously conflating the nexus standard for withholding with the nexus standard for asylum. We review *de novo* whether the BIA applied the wrong legal standard to Garcia's withholding of removal claim. *Bringas-Rodriguez*, 850 F.3d at 1059.

The Attorney General must, in general, withhold removal of a noncitizen if the noncitizen's life or freedom would be threatened "because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also INS v. Stevic*, 467 U.S. 407, 424–25 (1984). To succeed, an applicant must show a "clear probability" of persecution because of a protected ground. *Stevic*, 467 U.S. at 429–30.

Demonstrating a clear probability "requires objective evidence that it is more likely than not that the [noncitizen] will be subject to persecution upon deportation." *Zehatye v. Gonzales*, 453 F.3d 1182, 1190 (9th Cir. 2006). A person seeking asylum has the burden of proving that their persecution was "on account of" a protected ground, *see* 8 U.S.C. § 1101(a)(42)(A), while a withholding of removal applicant must prove that her life or freedom would be threatened "because of" a protected characteristic, 8 U.S.C. § 1231(b)(3)(A). "The words 'on account of' and 'because of' address the persecutor's motive for persecuting the victim." *Barajas-Romero*, 846 F.3d at 357. An asylum applicant must demonstrate that a protected ground was "at least one central reason" for her persecution. 8 U.S.C. § 1158(b)(1)(B)(i). A withholding of removal applicant, on the other hand, must prove only that a cognizable protected ground is "a reason" for future persecution. *Barajas-Romero*, 846 F.3d at 359.

The "clear probability" standard for withholding is a more stringent burden of proof than the standard for asylum, which does not require that the applicant demonstrate that harm would be more likely than not to occur. *See id.* But the requirement that an applicant demonstrate that a protected characteristic would be "a reason" for future persecution is a "weaker motive" than the "one central reason" required for asylum. *Id.* "A person may have 'a reason' to do something that is not his 'central' reason or even 'one central reason.'" *Id.* Thus, although the overall standard of proof is more difficult to meet in withholding cases, the motive for persecution is easier to show. *See id.* at 360 ("Since in withholding the petitioner must show a probability, not just a well-founded fear, of persecution, Congress may have diluted the nexus requirement in order

to afford more protection against mistaken deportations where a protected ground played into that likelihood.").

Garcia contends that the BIA applied an erroneous legal standard to its nexus analysis for her withholding of removal claim, warranting remand. We agree. In *Barajas-Romero v. Lynch*, we held that the phrase "a reason" includes "weaker motives" than "one central reason." *Id.* at 359. Because the BIA had erroneously used the "one central reason" standard to decide the applicant's withholding claim, we remanded to the BIA to decide the case under the correct "a reason" standard. *Id.* at 360. We explained that Congress had amended the asylum statute in 2009 to clarify that the burden of proof for persecutor motive is "at least one central reason." *Id.* at 358 (citing 8 U.S.C. § 1158(b)(1)(B)(i)). Because Congress had not chosen to also amend the withholding statute to adopt that standard, we stressed that Congress's choice to keep the "a reason" standard for withholding "appears to have been the product of a deliberate choice, rather than a mere drafting oversight." *Id.*; *see also Kucana v. Holder*, 558 U.S. 233, 249 (2010) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

The difference between the motive standards matters, particularly in cases like this one, in which the BIA's decision turns on its nexus determination. *Barajas-Romero* underscores the importance of understanding the proper nexus inquiry in close cases. There, the evidence suggested that the police had initially kidnapped and tortured the petitioner to extort money from him, but when he voiced a political opinion during his kidnapping, the torture arguably intensified and became worse. *Id.* at 360. The government

argued that the police were not aware of his political opinions before abusing him, so his persecution could not have been "on account of" his political opinions. *Id.* We explained, however, that the evidence was "not unambiguous" on this point, such that a remand of the petitioner's withholding of removal claim was proper for the BIA to consider whether application of the correct nexus standard might cause a different outcome. *Id.* Because the evidence in Garcia's case is similarly "not unambiguous," we remand to the BIA.

The Government contends that the BIA "plainly applied" the different withholding nexus standard by citing to the IJ's boilerplate addendum of law. We reject that contention. Although the BIA decision cited the IJ's addendum of law and our *Barajas-Romero* decision, which distinguished between the "one central reason" and "a reason" standards, the BIA's analysis is inconsistent with any serious consideration of the difference. In denying Garcia's withholding of removal claim, the BIA here stated: "As [Garcia] did not satisfy the lower standard of proof for asylum, it *necessarily follows* that she did not satisfy the more stringent standard for withholding of removal." (emphasis added). Even though the BIA followed this statement with a paragraph explaining that the standards are different, the BIA's use of "necessarily follows" demonstrates a type of piggy-backing analysis that we now reject as inconsistent with the statutory text and *Barajas-Romero*.

## V

Finally, we conclude that substantial evidence does support the BIA's denial of CAT relief. To gain CAT relief, Garcia had the burden to prove that it is more likely than not that (1) she, in particular, would be (2) subject to harm

amounting to torture (3) by or with the acquiescence of a public official, if removed.  8 C.F.R. § 1208.16(c)(2); *Wakkary v. Holder*, 558 F.3d 1049, 1067–68 (9th Cir. 2009). While the same "more likely than not" standard applies to CAT protection as withholding of removal under INA § 241, 8 U.S.C. § 1231, CAT applicants must demonstrate that the feared harm is greater in that it must rise to the level of torture. *Tamang v. Holder*, 598 F.3d 1083, 1095 (9th Cir. 2010).  That is not a minor distinction.  Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted . . . ."  8 C.F.R. § 1208.18(a)(1).  "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2).  Protection "under CAT is based entirely on an objective basis of fear; there is no subjective component to [an applicant's] fear of torture." *Tamang*, 598 F.3d at 1095.  Thus, speculative fear of torture is not sufficient to satisfy the applicant's burden. *Matter of V-X-*, 26 I. & N. Dec. 147, 154 (BIA 2013).

Substantial evidence supports the BIA's determination that there is not a greater than fifty percent chance that Garcia will experience torture if removed.  The agency's fact finding is conclusive unless a reasonable adjudicator would be compelled to conclude to the contrary.  INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).  The BIA here concluded that the IJ did not err in predicting Garcia's likelihood of future torture "even considering the prior threats, given that [Garcia] was never physically harmed by anyone in Mexico, did not attempt to relocate within Mexico, the Templars is the only cartel that she has had problems with, and the Mexican government is taking steps to combat corruption and cartel violence."  The BIA could

have reasonably given weight to the fact that Garcia lived peacefully in Michoacán between 2012 and 2018, when the Templars did not "bother[]" her.  Garcia testified that she believed she would not be safe living with her parents elsewhere in Mexico, and that she was not sure if she could live peacefully in Mexico City, but a speculative fear of torture is insufficient to satisfy the "more likely than not" standard. *See Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011).  The record does not compel the conclusion that Garcia will more likely than not be tortured if removed to Mexico, and for that reason we must deny relief on Petitioner's CAT claim.[3]

# VI

For these reasons, we conclude that the BIA erred in its nexus analysis for both Garcia's asylum claim and her withholding of removal claim.  We remand with instructions for the BIA to reconsider Garcia's asylum claim, and for the BIA to consider whether Garcia is eligible for withholding of removal under the proper "a reason" standard.  We deny the petition as it relates to Garcia's claim for relief under CAT.

**PETITION GRANTED IN PART; REMANDED.**

---

[3] Because that reason alone precludes CAT relief, we need not and do not reach any issue related to government acquiescence in or willful blindness to torture.