**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JUANA IRIS ESPINO GARCIA, | No. 16-72838 |
| Petitioner, | Agency No. A206-913-479 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 10, 2022
Seattle, Washington

Before:  BERZON, CHRISTEN, and FORREST, Circuit Judges.

Partial Concurrence and Partial Dissent by Judge FORREST.

Juana Iris Espino Garcia ("Espino Garcia"), a native and citizen of Mexico,

petitions for review from the Board of Immigration Appeals' ("BIA's") dismissal

of her appeal from the immigration judge's ("IJ's") denial of her application for

asylum, withholding of removal under the Immigration and Nationality Act, and

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

withholding of removal under the Convention Against Torture ("CAT"). We grant the petition in part and deny it in part.

When "the BIA agrees with the IJ's reasoning, we review both decisions." *Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1293 (9th Cir. 2018). "[W]e consider only the grounds relied upon by th[e] agency," and we remand to allow the agency to decide any remaining issues. *Regalado-Escobar v. Holder*, 717 F.3d 724, 729 (9th Cir. 2013) (quoting *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004)). We review legal questions de novo and factual findings for substantial evidence. *See Garcia v. Wilkinson*, 988 F.3d 1136, 1142 (9th Cir. 2021).

1. The BIA committed legal error when, for purposes of determining whether Espino Garcia established that the harms she fears are because of actual or imputed political opinion, it applied the same "one central reason" standard to both her asylum and statutory withholding of removal claims. An applicant for withholding of removal need only show that a protected ground is "a reason" for the feared harm, rather than "one central reason." *See Barajas-Romero v. Lynch*, 846 F.3d 351, 358–60 (9th Cir. 2017); *see also* 8 U.S.C. § 1231(b)(3)(C). The "a reason" standard applicable to withholding of removal is "less demanding" than the "one central reason" standard that applies to asylum claims. *Barajas-Romero*, 846 F.3d at 360; *see also Garcia*, 988 F.3d at 1146.

2

Where the BIA has applied the wrong nexus standard to a withholding of removal claim, remand is appropriate if the evidence supporting the agency's conclusion is "not unambiguous." *Garcia*, 988 F.3d at 1147; *Barajas-Romero*, 846 F.3d at 360. Here, Espino Garcia, whom the agency found credible, submitted evidence from which a reasonable fact finder could conclude that actual or imputed political opinion was "a reason" for the harms she fears. First, she provided evidence connecting her sister's and brother-in-law's murders to their political activities. She testified that her sister and brother-in-law were politically active, her brother-in-law held a government position, and her brother-in-law had to travel for his political work. The sicarios were monitoring the couple's activities, warned her brother-in-law not to travel, and took away the couple's phones out of concern that they would report the sicarios to higher authorities. Two months after the sicarios took away their phones, the couple was found tortured and brutally executed. Espino Garcia testified that the sicarios most likely targeted her sister and brother-in-law because of their political activities and her brother-in-law's government position.

Second, Espino Garcia presented evidence connecting the threats she received to the harms suffered by her sister and brother-in-law and to her own political opinion. Evidence that an applicant was harmed because of a family member's government service can support the conclusion that the harm was based

3

on imputed political opinion. *See Parada v. Sessions*, 902 F.3d 901, 910 (9th Cir. 2018). Espino Garcia testified that the sicarios knew she was a member of the same political party as her sister and brother-in-law and that she attended political events with the couple. The sicarios had threatened Espino Garcia's sister that if her husband travelled, her family would be killed. And a few months after the murders, an armed man threatened Espino Garcia that the same thing that happened to her sister could happen to her.

That Espino Garcia was in danger because of her actual or imputed political opinion was therefore not entirely "speculative," as the BIA and IJ concluded; there was evidence, albeit circumstantial, supporting this interpretation of the threats against her, although her family connection to her sister and brother-in-law, independent of her own actual or imputed political opinion, could also have played a part.

In contrast, in the course of characterizing Espino Garcia's concerns as "speculative," the IJ himself improperly speculated that her sister and brother-in-law might have been killed due to a "deal . . . gone bad." There was no evidence whatsoever to support the IJ's supposition, nor was there any evidence supporting any alternative explanation for the couple's murder and the threats to Espino Garcia.

Nor can the violence and threats Espino Garcia recounted necessarily be attributed to "generalized violence affecting the population at large," as the BIA indicated. The sicarios repeatedly threatened Espino Garcia's sister and brother-in-law personally before coming to their home and murdering them execution-style, and there was no evidence of a motive such as theft or extortion. Moreover, the continued threats against the victims' family belies the general violence characterization. *See, e.g.*, *Silaya v. Mukasey*, 524 F.3d 1066, 1071 (9th Cir. 2008) (explaining that continued harassment after an attack may "suggest that this was a purposeful attack with a political motive, rather than a despicable act of unmotivated violence against a stranger") (quoting *Ochave v. I.N.S.*, 254 F.3d 859, 866 (9th Cir. 2001)).

Because the record contains some evidence that could support the conclusion that political opinion was "a reason," even if not "one central reason," that Espino Garcia would be targeted, the record on the question is "not unambiguous." *See Garcia*, 988 F.3d at 1147; *Barajas-Romero*, 846 F.3d at 360. We therefore remand to the agency for consideration of the withholding claim under the "a reason" standard.

2.      With respect to Espino Garcia's asylum claim, substantial evidence supports the BIA's conclusion that Espino Garcia failed to establish that actual or imputed political opinion was "one central reason" for the harms she fears.

5

Although there is evidence that her sister and brother-in-law were killed because of their political activities, that the sicarios also targeted the couple's family, and that the sicarios knew of Espino Garcia's political activities, we are unable to conclude that the record *compels* a conclusion that "one central reason" for the feared harm was political opinion.[1]

3.     The BIA erred by failing to give reasoned consideration to Espino Garcia's evidence concerning her CAT claim. "[A]ll evidence relevant to the possibility of future torture shall be considered" by the agency, 8 C.F.R. § 1208.16(c)(3), and the BIA's failure to discuss "highly probative or potentially dispositive evidence" is legal error. *Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022) (quoting *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011)). The BIA concluded in one sentence that the IJ had not clearly erred in determining that she had failed to establish that she would be tortured with the consent or acquiescence of a government official.

Espino Garcia presented evidence that the local police helped the sicarios target and kill individuals who made police reports against them. For example, she testified that "if the people . . . go to the police to report the criminals – it will be the same police that hand [them] over to the criminals for them to get killed."

---

[1] There is some disagreement in our case law about the appropriate standard of review for nexus issues, but we need not resolve the question here because it would not change the outcome. *See Garcia*, 988 F.3d at 1142 n.2.

"Every time a person or somebody makes a report, they always appear dead." She recounted an incident in which a man who had reported the sicarios to the police was found dead "hanging from a bridge with his tongue cut out and a sign around his neck warning people that this is what happens to people who report to the police." According to Espino Garcia, if the police witnessed the sicarios harming others, "[t]hey won't care" to stop the sicarios. Further, she indicated that the sicarios might be paying off the local police, stating that "maybe [the sicarios] paid . . . the police [because] they don't do anything."

The IJ stated, inaccurately, that "there is *no* indication the government would torture her, acquiesce, or be willfully blind to it." (Emphasis added). The IJ also concluded that Espino Garcia's concern that the sicarios were working with the local police was contradicted by her testimony that the sicarios were afraid that her brother-in-law would report them to authorities outside the locality. This reasoning is unsupported by the record, which does not indicate that the local police had authority elsewhere and instead suggests that there were separate military or state police whom the sicarios feared.

The BIA stated generally that it concluded the IJ's determination was not clearly erroneous based on "the totality of the record." The BIA's use of "a catchall phrase does not suffice," however, when "there is any indication that the BIA did not consider all of the evidence before it." *Cole*, 659 F.3d at 771–72; *see*

7

*also* 8 C.F.R. § 1208.16(c)(3).  Here, the BIA did not acknowledge the evidence suggesting that the sicarios feared the military or state police, which undermined the IJ's conclusion.  Nor did the BIA address the IJ's plainly incorrect statement that "there is *no* indication" in the record of acquiescence or willful blindness by the government.  And the BIA itself did not discuss the evidence that Espino Garcia presented on that question.  Because these failures indicate that the BIA failed to consider all the evidence, we remand for the agency to reconsider her CAT claim.  *See Cole*, 659 F.3d at 772.

Each party shall bear its own costs.  *See* Fed. R. App. P. 39(a)(4).

**PETITION DENIED IN PART, GRANTED IN PART, AND REMANDED.**



*Espino Garcia v. Garland*, No. 16-72838
FORREST, J., concurring in part and dissenting in part:

I agree that Petitioner Juana Iris Espino Garcia failed to establish eligibility for asylum and that her withholding of removal claim must be remanded for the agency to apply the proper legal standard. But I disagree that Espino Garcia's Convention Against Torture (CAT) claim should also be remanded, and I would deny that claim.

The majority concludes that the Board of Immigration Appeals (BIA) erred by failing to address key evidence related to government acquiescence, including Espino Garcia's testimony that the sicarios were afraid of the military or state police. The majority improperly focuses on the BIA's decision without reference to the Immigration Judge's (IJ) findings. When the BIA affirms and relies upon an IJ's "statement of reasons" on clear error review, as it did here, we look to the IJ's "decision as a guide to what lay behind the BIA's conclusion." *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008) (citation omitted). "[A]ll evidence relevant to the possibility of future torture shall be considered" by the agency. 8 C.F.R. § 1208.16(c)(3). Absent an indication that it "fail[ed] to consider all the evidence, a general statement that [the agency] considered all the evidence before [it] may be sufficient." *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011) (citation and internal quotation marks omitted). The agency is not required "to write an exegesis on every contention," *Vitchez v. Holder*, 682 F.3d 1195, 1201 (9th Cir. 2012) (citation and

1

internal quotation marks omitted), nor is it required to "discuss each piece of evidence submitted." *Cole*, 659 F.3d at 771.

Here, the evidence at issue (Espino Garcia's testimony) suggests that local police helped the sicarios target and kill individuals who filed police reports. The IJ acknowledged Espino Garcia's testimony, including that she did not report the murders of her family members or the threats made against her "because she believed that the police were involved with the Sicarios." It also detailed the documentary evidence relevant to whether government officials were more likely than not to torture Espino Garcia or acquiesce in her torture committed by third parties and concluded that it was insufficient. *See* 8 C.F.R. § 1208.16(c)(2). Because the BIA agreed with the IJ's reasoning, we are guided by the IJ's decision as to "what lay behind the BIA's conclusion." *Tekle*, 533 F.3d at 1051; *see Amaya v. Garland*, 15 F.4th 976, 987 (9th Cir. 2021) (looking to the IJ's reasoning when denying the petitioner's CAT claim because of the BIA's conclusory agreement with the IJ's holding); *see also Sanchez-Ruano v. Garland*, 8 F.4th 965, 967 n.4 (9th Cir. 2021) (noting that the BIA's failure to "expressly analyze" the petitioner's argument was "of no import" because its "'simple statement of a conclusion' . . . directs us to review the IJ's analysis of that issue"). And here, with the IJ's treatment of the record, the BIA's general statement that it reviewed "the totality of the record" was not improper. *Cf. Parada v. Sessions*, 902 F.3d 901, 915–16 (9th Cir. 2018)

2

(remanding for further consideration of the petitioner's CAT claim because the IJ "ignored significant evidence in the record," including key testimony and country conditions reports).

The majority points to the IJ's failure to specifically reference Espino Garcia's testimony that the sicarios feared the military or national police but not the local police. Silence regarding evidence of record is reversible error only when the evidence is "highly probative or potentially dispositive." *Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022) (quoting *Cole*, 659 F.3d at 772). That is not the case here. As explained below, substantial evidence supports the agency's finding that Espino Garcia's assertion that police were being paid off or cooperating with the sicarios was based on speculation. That the sicarios may have feared the military or national police (she wasn't sure which or even if there is a difference between local and national police) does not undermine this finding.

Regarding the merits, the majority concludes that the IJ erred in finding that "there is no indication" that the government would torture Espino Garcia or acquiesce in her torture by third parties. Substantial evidence supports the agency's denial of CAT relief. Espino Garcia had to prove that she faces a "*particularized threat*" of torture by or with government acquiescence. *See Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008). Evidence of general government ineffectiveness in preventing torture or of generalized violence in society is insufficient. *See B.R. v.*

3

*Garland*, 26 F.4th 827, 844–45 (9th Cir. 2022). Even though Espino Garcia testified about threats being made against her and other family members after her sister and brother-in-law were killed, she admitted that her family members who remained in Mexico (who also supported the same political party as her sister and brother-in-law) were never harmed and neither was the mayor that her deceased brother-in-law worked for nor any of the teachers at the school that the sicarios supposedly opposed at the time of the murders. And while she suggested that "maybe" the sicarios paid off the police and the police "might" inform the sicarios who makes reports, her basis for this assertion was hearing about this happening in the news. While she boldly proclaimed that "[e]very time a person or somebody makes a report, they always appear dead," she admitted that she did not know how the sicarios would know about a report being made and had no personal knowledge of it ever happening. This record does not compel the conclusion that the agency erred in determining that it is entirely speculative whether government officials would acquiesce in torture committed by the sicarios. 8 U.S.C. § 1252(b)(4)(B); *Zheng v. Holder*, 644 F.3d 829, 835–36 (9th Cir. 2011).

For these reasons, I would deny Espino Garcia's petition as relates to her CAT claim and remand solely on her withholding of removal claim.