**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSUE UMANA-ESCOBAR, | No. 19-70964 |
| *Petitioner,* | Agency No. A205-474-027 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | ORDER AND AMENDED OPINION |
| *Respondent.* | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted January 11, 2023
Pasadena, California

Filed March 17, 2023
Amended May 23, 2023

Before: Paul J. Watford, Michelle T. Friedland, and Mark
J. Bennett, Circuit Judges.

Order;
Opinion by Judge Bennett

# SUMMARY[*]

## Immigration

The panel filed: 1) an order withdrawing the opinion filed March 17, 2023, and reported at 62 F.4th 1223 (9th Cir. 2023), replacing that opinion with a concurrently filed amended opinion and, with these amendments, denying the government's motion to amend; and 2) an amended opinion denying in part and granting in part Josue Umana-Escobar's petition for review of a decision of the Board of Immigration Appeals, and remanding.

In the amended opinion, the panel: (1) denied the petition as to Umana-Escobar's unexhausted argument that the omission of required time and place information in his Notice to Appear ("NTA") amounted to a claim-processing error; (2) remanded Umana-Escobar's administrative closure claim for further consideration in light of intervening precedent; and (3) remanded Umana-Escobar's asylum and withholding claims because the BIA erroneously reviewed the immigration judge's nexus determination for clear error, rather than de novo.

Before the agency, Umana-Escobar argued that because his NTA omitted required time and place information the IJ lacked jurisdiction. Before this court, however, Umana-Escobar raised a different argument, contending the BIA should have terminated his proceedings because the defective NTA amounted to a claim-processing

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

violation.  The panel observed that in his counseled brief on appeal to the BIA, Umana-Escobar argued exclusively that an NTA that lacks either the time or place of a removal proceeding cannot vest an immigration court with jurisdiction.  Umana-Escobar also told the BIA that it did not have to consider whether his claim had been waived because "jurisdiction cannot be waived."  The panel wrote that it was therefore clear that Umana-Escobar's NTA argument sounded exclusively in jurisdiction and that the BIA thus had no reason to consider whether the NTA's defects could constitute some other type of violation which might be subject to waiver, such as a claim-processing violation.  Because the panel agreed with the government that Umana-Escobar failed to exhaust the alleged claim-processing violation as required under 8 U.S.C. § 1252(d)(1), the panel denied this portion of the petition.  In doing so, the panel cited the Supreme Court's recent opinion in *Santos-Zacaria v. Garland*, 598 U.S. ----, 2023 WL 3356525 (2023), which held that 8 U.S.C. § 1252(d)(1)'s exhaustion requirement is a claim-processing rule.

The BIA denied Umana-Escobar administrative closure after concluding that it had no authority to grant such relief under *Matter of Castro-Tum*, 27 I. & N. Dec. 271 (A.G. 2018).  However, while this petition was pending, the Attorney General issued *Matter of Cruz-Valdez*, 28 I. & N. Dec. 326 (A.G. 2021), which overruled *Matter of Castro-Tum* and reinstated the BIA's authority to grant administrative closure pending the Department of Justice's review of a regulation concerning the issue.  Given this change, the panel agreed with the government's unopposed recommendation to remand the administrative closure issue to the BIA for further consideration.

The BIA upheld the immigration judge's denial of asylum and withholding of removal solely based on Umana-Escobar's failure to establish the required nexus between a protected ground and past or future harm. Umana-Escobar first argued that the IJ applied the wrong nexus standard to his withholding of removal claim because, rather than determine whether a protected ground was *a reason* for the harm, the IJ stated that the evidence was insufficient to show that family was *the reason* for any threats. The panel rejected Umana-Escobar's contention, concluding that the IJ's allegedly problematic statement, when read in context with other statements in the decision, demonstrated that the IJ knew and applied the correct *a reason* nexus standard to the withholding of removal claim.

Umana-Escobar additionally argued that the BIA erred by reviewing the IJ's nexus determination for clear error, rather than de novo. The panel agreed. The panel explained that in *Matter of S-E-G-*, 24 I. & N. Dec. 579 (BIA 2008), the BIA stated that the nexus determination was a legal determination subject to de novo review. As support for its statement, *Matter of S-E-G-*cited among other authorities: (1) 8 C.F.R. § 1003.1(d)(3), the regulation setting forth the BIA's standards for reviewing an IJ's decision, and (2) the Department of Justice's commentary on the regulation, which discusses the interplay between the clearly erroneous standard of review applicable to an IJ's factual findings and the BIA's de novo authority. The DOJ Guidance explains that the nexus determination is not a factual determination subject to clear error review. Thus, the panel explained that the BIA reviews the IJ's underlying factual findings, such as what a persecutor's motive may be, for clear error. But the BIA must review de novo whether a persecutor's motives meet the nexus legal standards, i.e., whether a protected

ground was "one central reason" (for asylum) or "a reason" (for withholding of removal) for the past or feared harm.

Here, the BIA stated: "[T]here is no clear error in the Immigration Judge's determination that [Umana-Escobar] did not establish the requisite nexus between a protected ground . . . and the harm he fears in El Salvador." The panel found significant that the BIA expressly conflated the clear error standard with its review of the IJ's nexus determination. The panel explained that while this statement from the BIA must be read in context, there was insufficient indication from the rest of the BIA decision that the BIA's clear error review pertained to the IJ's factual determinations relating to the lack of persecutory motive, as opposed to the ultimate nexus determination. Thus, the panel remanded Umana-Escobar's asylum and withholding of removal claims for application of the proper standard.

Finally, the panel concluded that substantial evidence supported the agency's determination that Umana-Escobar failed to establish the requisite government involvement, or government acquiescence to, any torture.

---

**COUNSEL**

Sabrina R. Damast (argued) and Jose Medrano, Law Office of Sabrina Damast Inc., Los Angeles, California; for Petitioner.

Krishana Patel (argued), Trial Attorney; Brett F. Kinney, Attorney; Emily A. Radford and Holly M. Smith, Assistant Directors; Brian M. Boynton, Principal Deputy Assistant Attorney General; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division,

United States Department of Justice, Washington, D.C.; for Respondent.

## ORDER

The Opinion filed March 17, 2023, and reported at 62 F.4th 1223 (9th Cir. 2023), is withdrawn and replaced by the Amended Opinion filed concurrently with this order.

With these amendments, the panel votes to deny the government's motion to amend the opinion. Dkt. 69.

The mandate shall issue forthwith.

## OPINION

BENNETT, Circuit Judge:

Josue Umana-Escobar petitions for review of the Board of Immigration Appeals ("BIA") order upholding the immigration judge's ("IJ") denial of asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). He also challenges the BIA's determinations that defects in the Notice to Appear ("NTA") did not require termination of his proceedings and that the BIA lacked authority to administratively close his case.

We have jurisdiction under 8 U.S.C. § 1252. We deny the petition as to the defective NTA claim and the CAT claim. We grant the petition and remand as to the administrative closure issue, given the government's

recommendation that we should do so based on an intervening decision by the Attorney General.  We also grant the petition and remand as to the asylum and withholding of removal claims because the BIA applied the wrong standard in reviewing the IJ's determination that the evidence failed to establish the requisite nexus between a protected ground and past or future harm.

## I

## A

Umana-Escobar, a native and citizen of El Salvador, unlawfully entered the United States in May 2012. Following a credible fear interview, in which an asylum officer determined that Umana-Escobar had demonstrated credible fear, the Department of Homeland Security ("DHS") initiated removal proceedings against him.  DHS served Umana-Escobar with an NTA, charging him as removable for being present in the United States without being admitted or paroled by an immigration officer.  The NTA ordered Umana-Escobar to appear before an IJ at a date and time "to be determined."

Subsequently, the immigration court sent Umana-Escobar a Notice of Hearing, scheduling his hearing for January 23, 2013.  He appeared at the hearing, and the IJ continued his case so that he could obtain counsel.  The next hearing occurred on June 28, 2013.  At that hearing, Umana-Escobar, represented by counsel, admitted to the allegations in the NTA and conceded removability.  He also conceded that he had been properly served with the NTA, and he made no argument that his case should be terminated based on a defective NTA.  From 2013 to 2017, Umana-Escobar appeared at multiple hearings until his merits hearing, which was held on July 28, 2017.  He never objected to the

omission of date and time information from his NTA during his proceedings before the IJ.

Before the IJ, Umana-Escobar sought CAT relief as well as asylum and withholding of removal on account of an imputed political opinion and membership in two particular social groups: "immediate relatives of his father" and "children of civil servants." His claims were based on the February 2009 murder of his father; the January 2011 attempted murder of his brother, Carlos Alonso Umana-Escobar ("Carlos"); and a threat against his family, which was made shortly after the attack on Carlos.

Umana-Escobar's father was a municipal councilman; he also owned a jewelry business. Carlos operated the family's jewelry business. Around January 2009, people with masks robbed the business and threatened Carlos. One month later, in February 2009, gang members shot and killed Umana-Escobar's father. The police arrested three people for the murder—all three were prosecuted and incarcerated. Umana-Escobar testified before the IJ that, according to the investigation, the town mayor ordered his father's killing.[1] His father and the mayor belonged to the same political party. According to Umana-Escobar, shortly before his father was shot, a woman told him that "a gang member was going to hurt [his] father as ordered by the [mayor]," and that "[a]pparently the [mayor] . . . was no longer on good terms with [his] father." But Umana-Escobar admitted that he did not know why the mayor would want his father dead or why they were no longer on good terms. And although the mayor and his father disagreed over a project, Umana-Escobar

---

[1] Umana-Escobar provided no details about how he knew the investigation implicated the mayor.

testified that he did not know if his father's death was due to that disagreement.

About two years after his father's death, in January 2011, gang members shot at Carlos while he was driving to work. Umana-Escobar claimed that the gang members thought that he, his mom, and his nephew were also inside the vehicle. Umana-Escobar believed that the gang behind Carlos's attack was the same gang that killed his father. Umana-Escobar initially testified before the IJ that the shooting could have been an attempted robbery, but later testified that the shooters wanted to kill Carlos rather than rob him. The police investigated the shooting. But other than a threat against the family (discussed below), Carlos did not disclose any details related to the investigation. Carlos decided to sell the jewelry business after the shooting.

Umana-Escobar testified before the IJ that, while Carlos was recovering in the hospital, "somebody called [his] mother, and they told her that they wanted to kill us all." Carlos also told him that the detectives reiterated that the gang wanted to kill their family. But Umana-Escobar did not know how the detectives obtained that information, nor did he know the conclusions of the police investigation.

Carlos told Umana-Escobar to leave the country, and Umana-Escobar left El Salvador around March 2012. He had never been harmed in El Salvador. And the only threat against him was the one communicated to his mother around January 2011, after the attack on Carlos. Carlos and Umana-Escobar's mother are still living in El Salvador, although in hiding, and Umana-Escobar does not dispute the IJ's finding that they have faced no further threats in El Salvador.

## B

The IJ found Umana-Escobar credible but denied all relief. Umana-Escobar appealed to the BIA, challenging the IJ's denial of relief. He also moved to terminate the proceedings, arguing that the IJ lacked jurisdiction because the NTA omitted the required date and time information. He also requested administrative closure so that he could seek a waiver of his unlawful presence from the U.S. Citizenship and Immigration Services. *See* 8 C.F.R. § 212.7(e)(4)(iii) (an alien is ineligible for a provisional unlawful presence waiver if "[t]he alien is in removal proceedings, in which no final order has been entered, *unless the removal proceedings are administratively closed*" (emphasis added)).

The BIA dismissed the appeal. It rejected the jurisdictional argument based on the defective NTA because the omitted information did not give rise to a jurisdictional defect under BIA and Ninth Circuit precedent. The BIA also declined to administratively close the case, including because it lacked the authority to do so under *Matter of Castro-Tum*, 27 I. & N. Dec. 271, 287 n.9 (A.G. 2018).

On the merits, the BIA determined that the IJ properly denied asylum and withholding of removal because Umana-Escobar failed to establish the required nexus between a protected ground and any feared harm: "[T]here [was] no clear error in the Immigration Judge's determination that [Umana-Escobar] did not establish the requisite nexus between a protected ground in the [Immigration and Nationality] Act and the harm he fears in El Salvador." The BIA also affirmed the denial of CAT relief because the evidence was insufficient to establish the requisite government involvement.

Umana-Escobar timely petitioned for review of the BIA's decision.

## II

We review the BIA's decision and those parts of the IJ's decision that the BIA expressly adopted. *See Garcia v. Wilkinson*, 988 F.3d 1136, 1142 (9th Cir. 2021). We review the BIA's legal determinations de novo, including whether the BIA applied the wrong legal standard. *Id.* at 1142, 1146. We review the BIA's factual determinations for substantial evidence, meaning we may reverse only if the evidence compels a conclusion contrary to the BIA's. *Id.* at 1142.

## III

### A

Before the BIA, Umana-Escobar argued that it should terminate the proceedings because the NTA omitted required information and thus deprived the IJ of jurisdiction. On appeal, however, he presents a different justification for his argument that his NTA did not include all of the required information. He now argues that the BIA should have terminated his proceedings because the defective NTA amounted to a claim-processing violation. But Umana-Escobar failed to exhaust this alleged claim-processing violation. *See* 8 U.S.C. § 1252(d)(1).

"Exhaustion requires a non-constitutional legal claim to the court on appeal to have first been raised in the administrative proceedings below, and to have been sufficient to put the BIA on notice of what was being challenged." *Bare v. Barr*, 975 F.3d 952, 960 (9th Cir. 2020) (citation omitted). A petitioner "need not use precise legal terminology to exhaust his claim. Nor must he provide a well developed argument." *Arsdi v. Holder*, 659 F.3d 925,

929 (9th Cir. 2011) (citation omitted). "What matters is that the BIA was sufficiently on notice so that it 'had an opportunity to pass on th[e] issue.'" *Bare*, 975 F.3d at 960 (quoting *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004)).

Umana-Escobar's counseled BIA brief raised the defects in the NTA but made only a jurisdictional argument based on such defects, arguing exclusively that an NTA that lacks either the time or place of a removal proceeding cannot vest an immigration court with jurisdiction. Umana-Escobar also told the BIA that it did not have to consider whether his claim had been waived because "jurisdiction cannot be waived." It is therefore clear that Umana-Escobar's NTA argument sounded exclusively in jurisdiction and that the BIA thus had no reason to consider whether the NTA's defects could constitute some other type of violation which might be subject to waiver, such as a claim-processing violation. *See Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019) ("[A]n objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point." (quotation marks and citation omitted)). Because we agree with the government that Umana-Escobar failed to exhaust the alleged claim-processing violation as required under 8 U.S.C. § 1252(d)(1), we deny this portion of the petition. *See Santos-Zacaria v. Garland*, 598 U.S. ----, 2023 WL 3356525, at *5 (2023) (holding that 8 U.S.C. § 1252(d)(1) is a claim-processing rule); *Fort Bend*, 139 S. Ct. at 1849 ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raises' it." (alterations omitted) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam))).

**B**

Umana-Escobar challenges the BIA's refusal to administratively close his case. The BIA held that it had no authority to grant administrative closure under *Matter of Castro-Tum*, 27 I. & N. Dec. at 287 n.9. But while this appeal was pending, the Attorney General issued *Matter of Cruz-Valdez*, 28 I. & N. Dec. 326, 329 (A.G. 2021), which overruled *Matter of Castro-Tum* and reinstated the BIA's authority to grant administrative closure pending the Department of Justice's review of a regulation concerning the issue. Given this change, we agree with the government's unopposed recommendation to remand the administrative closure issue to the BIA for further consideration.

**C**

The BIA upheld the IJ's denial of asylum and withholding of removal solely based on Umana-Escobar's failure to establish the required nexus between a protected ground and past or future harm. Umana-Escobar challenges that determination, arguing that the IJ applied the wrong nexus standard to his withholding of removal claim because, rather than determine whether a protected ground was *a reason* for the harm, the IJ stated that the evidence was insufficient to show that "family was *the reason* for [the] threats." (emphasis added).

A nexus between the harm and a protected ground is a necessary element of asylum and withholding of removal. *Barajas-Romero v. Lynch*, 846 F.3d 351, 357 (9th Cir. 2017). But the nexus standards for asylum and withholding of removal differ. For asylum, "the protected characteristic must be 'a central reason' for the past or feared harm." *Garcia*, 988 F.3d at 1143. "[A] motive is a 'central reason'

if that motive, standing alone, would have led the persecutor to harm the applicant." *Parussimova v. Mukasey*, 555 F.3d 734, 741 (9th Cir. 2009). For withholding of removal, an applicant must show only that a "protected ground is 'a reason' for future persecution." *Garcia*, 988 F.3d at 1146 (quoting *Barajas-Romero*, 846 F.3d at 359).

Umana-Escobar fails to read the IJ's allegedly problematic statement in context. Just before stating that the evidence was insufficient to show that "family was the reason for [the] threats," the IJ stated that he had to determine whether a protected ground was "a reason for the harm" and that the evidence was insufficient under "this broader nexus" standard. Additionally, earlier in his decision, the IJ recited the proper nexus standards for asylum and withholding of removal, noting that "the nexus for withholding has been clarified to be not a central reason, but a reason only." The IJ knew and applied the correct nexus standard to the withholding of removal claim.

## D

Umana-Escobar also argues that the BIA should have reviewed the IJ's nexus determination de novo, not for clear error. We agree.[2]

In *Matter of S-E-G-*, 24 I. & N. Dec. 579 (BIA 2008), the BIA stated that the

---

[2] The government initially argued that the correct standard was clear error. But after we ordered supplemental briefing, the government conceded that whether a protected ground meets the required nexus standard is a legal determination that the BIA is required to review de novo.

nexus determination is a legal determination subject to de novo review. *Id.* at 588 n.5 ("The record before us is adequate to allow us to perform de novo review of the legal issues presented, specifically, whether the respondents established that they were persecuted 'on account of' a protected ground."). As support for its statement, the BIA cited among other authorities: (1) 8 C.F.R. § 1003.1(d)(3), the regulation setting forth the BIA's standards for reviewing an IJ's decision[3]; and (2) the Department of Justice's commentary on the regulation, which discusses the interplay between the clearly erroneous standard of review applicable to an IJ's factual findings and the BIA's de novo authority. *Id.* (citing Board of Immigration Appeals: Procedural Reforms To Improve Case Management ("DOJ Guidance"), 67 Fed. Reg. 54,878, 54,890 (Aug. 26, 2002)).[4]

---

[3] The regulation provides, in relevant part:

> (3) Scope of review.
>
> (i) The Board will not engage in de novo review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.
>
> (ii) The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo.

8 C.F.R. § 1003.1(d)(3)(i)–(ii).

[4] In *Matter of S-E-G-*, 24 I. & N. Dec. at 588 n.5, the BIA also cited *Matter of V-K-*, 24 I. & N. Dec. 500 (BIA 2008), and *Matter of A-S-B-*, 24 I. & N. Dec. 493 (BIA 2008). Those cases have been overruled only to the extent that they held that "predictive findings of what may or may not occur in the future" are not factual findings. *Matter of Z-Z-O-*, 26 I.

The DOJ Guidance explains that the nexus determination is not a factual determination subject to clear error review:

> The immigration judge's determination of "what happened" to the individual is a factual determination that will be reviewed under the clearly erroneous standard. The immigration judge's determinations of whether these facts demonstrate harm that rises to the level of "persecution," and whether the harm inflicted was "on account of" a protected ground, are questions that will not be limited by the "clearly erroneous" standard.

DOJ Guidance, 67 Fed. Reg. at 54,890.

Thus, the BIA reviews the IJ's underlying factual findings, such as what a persecutor's motive may be, for clear error. *See, e.g.*, *Matter of N-M-*, 25 I. & N. Dec. 526, 532 (BIA 2011) ("A persecutor's actual motive is a matter of fact to be determined by the Immigration Judge and reviewed by [the BIA] for clear error."). But the BIA must review de novo whether a persecutor's motives meet the nexus legal standards, i.e., whether a protected ground was "one central reason" (for asylum) or "a reason" (for withholding of removal) for the past or feared harm. *Garcia*, 988 F.3d at 1146 (quoting 8 U.S.C. § 1158(b)(1)(B)(i) and *Barajas-Romero*, 846 F.3d at 359).

Here, the BIA stated that it reviewed the IJ's nexus determination for clear error: "[T]here is no clear error in the

---

& N. Dec. 586, 590 (BIA 2015). Thus, *Matter of V-K-* and *Matter of A-S-B-* remain good law for the proposition that the IJ's nexus determination is a legal question subject to de novo review by the BIA.

Immigration Judge's determination that [Umana-Escobar] did not establish the requisite nexus between a protected ground . . . and the harm he fears in El Salvador." We find significant that the BIA expressly conflated the clear error standard with its review of the IJ's nexus determination. And while this statement from the BIA must be read in context, here, there is insufficient indication from the rest of the BIA decision that the BIA's clear error review pertained to the IJ's factual determinations relating to the lack of persecutory motive, as opposed to the ultimate nexus determination.[5] Thus, we remand the asylum and withholding of removal claims so that the BIA can apply the proper standard. *See Ridore v. Holder*, 696 F.3d 907, 909 (9th Cir. 2012) (remanding to the BIA when it applied the wrong legal standard under the agency's regulations); *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006) ("[W]here the BIA applies the wrong legal standard to an applicant's claim, the appropriate relief from this court is remand for reconsideration under the correct standard, not independent review of the evidence."). In reviewing the IJ's nexus determination de novo, the BIA should consider whether the IJ improperly disregarded Umana-Escobar's testimony that his family members were in hiding and

---

[5] The government's supplemental brief argues that the BIA applied the correct standard of review because a persecutor's motive is reviewed for clear error and the BIA limited its clear error review to the IJ's factual determination that there was no evidence about what motive drove Umana-Escobar's persecutors. The government's argument is unpersuasive because it fails to reconcile its position with the BIA's express statement that it applied clear error review to the nexus determination more broadly. Moreover, the government argued in its answering brief that the BIA had properly reviewed the nexus determination for clear error. And the government maintained that position at oral argument. Oral Arg. at 12:11–13:32.

whether considering that changes the likelihood that he would be persecuted if returned to El Salvador. *See Akosung v. Barr*, 970 F.3d 1095, 1105 (9th Cir. 2020).

## E

Umana-Escobar argues that the BIA erred in denying CAT relief. For CAT relief, an applicant must prove "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The applicant must also prove that the torture would be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Acquiescence occurs when "'prior to the activity constituting torture,' the officials: (1) have awareness of the activity (or consciously close their eyes to the fact it is going on); and (2) breach their legal responsibility to intervene to prevent the activity because they are unable or unwilling to oppose it." *Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014) (quoting *Ornelas-Chavez*, 458 F.3d at 1059).

The BIA denied CAT relief because the evidence failed to prove the required government involvement. The BIA's determination is supported by substantial evidence. *See id.* at 1031. The record supports that the El Salvadoran government would not acquiesce in torture against Umana-Escobar. The authorities investigated his father's murder and prosecuted three men. The men were convicted and sentenced to prison. Authorities also investigated the attack on Carlos. Umana-Escobar points to a news article supporting that many authorities collude with criminals. But given the evidence supporting that the government would not acquiesce in torture against him, this article does not

compel the conclusion that the government would acquiesce in torture against him.  *See id.* at 1034.

The record also supports that there was insufficient evidence to show that any torture would be inflicted by or at the instigation of or with the consent of a government official.  Although Umana-Escobar testified that he was told that the mayor was involved in his father's murder, he never claimed that the mayor participated in the attack on Carlos or the threat against his family.  Nor did he offer any evidence to support that the mayor had a motive to harm him.  Given the lack of evidence showing that the mayor had any desire to harm Umana-Escobar, the BIA reasonably concluded that he did not show the requisite government involvement for CAT relief.

### IV

We grant the petition and remand as to the administrative closure issue and the asylum and withholding of removal claims.  We deny the petition as to the alleged claim-processing violation based on the defective NTA and the CAT claim.

**PETITION GRANTED IN PART, DENIED IN PART, and REMANDED.**[6]

---

[6] The parties shall bear their own costs on appeal.