**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIAM CRUZ CORTEZ, | No. 22-1694 |
| Petitioner, | Agency No. A216-550-797 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted January 8, 2024
San Francisco, California

Before: SILER[**], TASHIMA, and BRESS, Circuit Judges.
Dissent by Judge TASHIMA.

William Cruz Cortez (Cortez), a native and citizen of El Salvador, petitions

for review of a Board of Immigration Appeals (BIA) decision dismissing an appeal

of an Immigration Judge (IJ) order denying his application for asylum, withholding

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Eugene E. Siler, United States Circuit Judge for the Court of Appeals, 6th Circuit, sitting by designation.

of removal, and protection under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252. We deny the petition.[1]

"Because the BIA agreed with the IJ's reasoning and added some of its own, we review the BIA's decision and those parts of the IJ's decision upon which it relied." *Sharma v. Garland*, 9 F.4th 1052, 1059 (9th Cir. 2021). "We review for substantial evidence the BIA's determination that a petitioner has failed to establish eligibility for asylum or withholding of removal." *Id.* at 1060. Under the substantial evidence standard, "we must uphold the agency determination unless the evidence compels a contrary conclusion." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019).

To be eligible for asylum, a petitioner has the burden to demonstrate "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "To be eligible for withholding of removal, the petitioner must discharge this burden by a 'clear probability.'" *Sharma*, 9 F.4th at 1059 (quoting *Alvarez-Santos v. INS*, 332 F.3d 1245, 1255 (9th Cir. 2003)). To obtain relief, the petitioner must show that his past or feared persecution bears a nexus to a protected ground. *Umana-Escobar v. Garland*, 69 F.4th 544, 551 (9th Cir. 2023), *as amended*.

---

[1] Cortez does not challenge the BIA's decision that his CAT claim is waived.

For asylum, the petitioner must show that a protected ground "was or will be at least one central reason" for the persecution. 8 U.S.C. § 1158(b)(1)(B)(i). For withholding of removal, there is a nexus if the petitioner shows that a protected ground was "a reason" for the past or feared harm. *Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017).

Substantial evidence supports the BIA's determination that Cortez cannot demonstrate a nexus between his past or feared persecution and a protected ground.[2] Cortez waived the issue of past persecution by failing to argue it before the BIA in any meaningful way. *See generally Rizo v. Lynch*, 810 F.3d 688, 692 (9th Cir. 2016) (holding that a petitioner does not meaningfully challenge the IJ's finding if he does not "apprise the BIA of the particular basis for [his] claim that the IJ erred").

As to claimed future persecution, in determining that Cortez failed to demonstrate a nexus to his proposed social group of former bus drivers, the IJ found that "[t]he gang, and El Diablo specifically, a member of the gang, was targeting [Cortez] because he was accessible and had information about his father-in-law, the father of his partner, who had businesses and money, and the intent of the gang was to extort the money from [Cortez's] father-in-law, the father of his partner." Referencing this finding, the BIA stated that Cortez "has not established clear error

---

[2] Because we resolve the petition for review on nexus grounds, we do not reach whether the agency's particular social group analysis was correct.

in the Immigration Judge's finding that any harm to him would be motivated by the gang members' desire to extort his partner's father's businesses."[3]

The record does not compel a contrary conclusion. In his declaration, Cortez stated that the MS gang extorted him for "rent," which he paid on a weekly basis. Cortez's declaration also stated that El Diablo called him about money, including his father-in-law's finances and businesses. Cortez stated that "El Diablo was . . . interested in getting money out of [Cortez's father-in-law's] stores and finding out how much the stores were worth." El Diablo's threat that instigated Cortez's flight to the United States was also motivated by financial gain, as Cortez said that El Diablo "wanted information about my father-in-law's net worth and his businesses and if I didn't tell him, he would kill me and my family." Cortez told the IJ that El Diablo "wanted [Cortez] to take the extortion," that he paid the gang extortion, and

---

[3] Although the IJ did not apply the no-nexus finding to Cortez's proposed family social group, we read the BIA to adopt the IJ's finding about the gang's financial motivation and to apply that finding to the proposed family social group. The BIA held that the petitioner did not establish "clear error in the Immigration Judge's finding that any harm to him would be motivated by the gang members' desire to extort his partner's father's businesses." This is a situation where we review for substantial evidence "the BIA's decision and those parts of the IJ's decision upon which it relied." *Sharma*, 9 F.4th at 1059. Here, substantial evidence supports both the IJ's factual finding and the BIA's application of that finding to Cortez's claimed harm on account of his family membership. The dissent is incorrect to say that this conclusion is untenable because the BIA rejected the proposed family social group. The BIA's nexus holding is framed as an alternative ground for denying relief "[e]ven if [Cortez] were a member of a cognizable particular social group."

that he faced a threat of death because his father-in-law set up two other businesses. Cortez further informed the IJ that his family members who paid the gang were not threatened.

In *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012 (9th Cir. 2023), we held that "[w]here the record indicates that the persecutor's actual motivation for threatening a person is to extort money from a third person, the record does not compel finding that the persecutor threatened the target because of a protected characteristic such as family relation." *Id.* at 1019. In this case, substantial evidence supports the conclusion that El Diablo and the MS gang threatened Cortez not because of his family membership, but to extort money from Cortez and his father-in-law. Simply because Cortez had a family relationship with his father-in-law "doesn't transform the *persecutor's* motivation from money to actual animus against a protected characteristic." *Id.* at 1020 (emphasis in original). Substantial evidence supports the BIA's determination that El Diablo threatened Cortez "only as an instrumental means to obtain money, and was not motivated intrinsically by his familial relationship" with his father-in-law. *Id.* Thus, the record does not compel the conclusion that Cortez has shown that a protected characteristic is "a reason" or "one central reason" for his claimed future persecution.

**PETITION DENIED.**

*Cruz Cortez v. Garland*, No. 22-1694

TASHIMA, Circuit Judge, dissenting:

There are several reasons why the agency's decision denying Petitioner's application is not supported by substantial evidence. *First*, the agency erred in rejecting Petitioner's proposed family social group on the ground that he was not legally married to his partner. *Second*, the BIA's conclusion that there was no nexus between Petitioner's social group and the threats he received is not supported by substantial evidence because it was based on a purported finding that the IJ did not actually make. In fact, it is inconsistent with the IJ's findings. Moreover, the record establishes that Petitioner's family relationship was the reason the persecutors targeted him. For these reasons, I respectfully dissent.

*First*, both the IJ and BIA erred in concluding that Petitioner's proposed family social group was not cognizable solely because he was not legally married to his partner. We have never held that an applicant must be legally married to his or her partner in order to be considered a family member. In fact, our cases have assumed that legal marriage is not required fo a putative spouse to be considered a family member. *See Ramirez-Alejandre v. Ashcroft*, 320 F.3d 858, 870 (9th Cir. 2003) (en banc) (stating that the petitioner "started a family with his common-law wife"); *Jacinto v. INS*, 208 F.3d 725, 727 (9th Cir. 2000) (stating that the petitioner alleged that "members of the Guatemalan military were persecuting her and her

family, including her common-law husband who is a former member of the Guatemalan military," and subsequently referring to him simply as "her husband"); *accord Cruz v. Sessions*, 853 F.3d 122, 124-25 (4th Cir. 2017) (holding that the petitioner's "familial relationship" with her partner "was one central reason for the persecution and fear of future persecution," where she was never married to her partner but they "were considered a married couple by members of their community"). As illustrated by *Ramirez-Alejandre*, *Jacinto*, and *Cruz*, there is no difference between being in a long-term committed relationship or common-law marriage and a legal marriage for purposes of a cognizable social group. This is particularly evident here, where Petitioner's evidence showed that not only do he, his partner, her father, and "everyone who knows them" consider them to be family, but the gang members threatening Petitioner also considered him to be family. The IJ and BIA thus erred in finding that Petitioner's proposed social group was not cognizable.

*Second*, the BIA misread the IJ's findings. Its conclusion that there was no nexus between Petitioner's proposed family social group and the threats he received was based on a finding that the IJ did not actually make. The BIA stated that, even if Petitioner's family social group were cognizable, he failed to establish clear error in the IJ's finding that the gang members were motivated by the desire

2

to extort his father-in-law's businesses, agreeing with the IJ's "ultimate legal determination that [Petitioner] has not demonstrated he would be harmed on account of his family membership."

However, this is not what the IJ found. The IJ did not address whether there was a nexus between Petitioner's proposed family social group and the harm because of the IJ's conclusion that a family social group required a legal marriage. Instead, the IJ found that there was no nexus between Petitioner's social group of former bus drivers and the harm he experienced and fears. In fact, the IJ found that the gang targeted Petitioner "because he was accessible and had information about his father-in-law."

I disagree with the majority that substantial evidence supports the finding that there is no nexus between the proposed family social group and the harm Petitioner suffered. Even though the gang members' ultimate desire was to extort money from Petitioner's father-in-law, the record establishes that they would not have targeted Petitioner but for his relationship with his father-in-law. As the IJ found, the gang targeted Petitioner in order to obtain information about his father-in-law, from whom they wanted to extort money. Thus, the IJ found and the record shows that Petitioner's "family membership was a reason motivating the [gang] to target [him]." *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1019 (9th Cir. 2023).

3

"That an unprotected ground, such as [extortion], *also* constitutes a central reason for persecution does *not* bar asylum." *Rodriguez Tornes v. Garland*, 993 F.3d 743, 751 (9th Cir. 2021).

The majority also fails to acknowledge that "the nexus standards for asylum and withholding of removal differ. . . . For withholding of removal, an applicant must show only that a 'protected ground is "a reason" for future persecution.'" *Umana-Escobar v. Garland*, 69 F.4th 544, 551 (9th Cir. 2023) (quoting *Garcia v. Wilkinson*, 988 F.3d 1136, 1146 (9th Cir. 2021)). Thus, "the requirement that an applicant demonstrate that a protected characteristic would be 'a reason' for future persecution is a 'weaker motive' than the 'one central reason' required for asylum. 'A person may have "a reason" to do something that is not his "central" reason or even "one central reason."'" *Garcia*, 988 F.3d at 1146 (quoting *Barajas-Romero v. Lynch*, 846 F.3d 351, 359 (9th Cir. 2017)).

The majority's reliance on the BIA's statement that Petitioner "has not established clear error in the Immigration Judge's finding that any harm to him would be motivated by the gang members' desire to extort his partner's father's businesses" ignores the fact that a protected ground need be only one reason for the persecution. There can be no doubt that the gang members targeted Petitioner specifically because of his relationship to his father-in-law; that is, they thought he

4

would have information about the person they wished to extort.

This was not a random encounter as in *Rodriguez-Zuniga*. There, the petitioner went to the bank to withdraw money that her husband in the United States had sent her. When she left the bank, a woman attempted to rob her, threatening to hurt the petitioner or her son if she did not give the woman the money. We held that there was no nexus between the threat and her family membership, explaining that she did not show that "her family membership was a reason motivating the robber to target her." *Rodriguez-Zuniga*, 69 F.4th at 1019. Here, by contrast, the record establishes that Petitioner's relationship to his father-in-law was the reason the gang targeted him.

Petitioner testified that the gang did not approach him until after he started his relationship with his partner. El Diablo asked Petitioner for information about his father-in-law, and the gang members threatened to kill Petitioner if he did not give them information about his in-laws, such as where they lived and what other businesses they had. Petitioner explained that he merely drove a bus and did not know anything about his in-laws' businesses, but El Diablo told him he needed to get the information because of his relationship with the family. Unlike *Rodriguez-Zuniga*, the gang members did not randomly approach Petitioner and try to rob him. Instead, they targeted him because of his relationship with his father-in-law,

which caused the gang members to believe he could obtain information about his in-laws.

It is true that the record establishes that gang members wanted to extort money from Petitioner's father-in-law (although not, as the majority says, from Petitioner). But the *only* reason they went after Petitioner was *because of* his relationship with his father-in-law. It is not clear how there can ever be a nexus between persecution and a family relationship if evidence that gang members threatened to kill Petitioner if he failed to give them information about his in-laws does not establish a nexus.

The majority's speculation that the BIA adopted the IJ's finding about the financial motivation and applied it to the proposed family social group does not make sense because the IJ and BIA rejected the proposed family social group. Substantial evidence does not support a finding the IJ did not make. In fact, the IJ found that Petitioner's fear of future persecution was "subjectively and objectively real," but she found that it was not based on a protected ground only because of her conclusion that the proposed social group of family was "not existing" because Petitioner was not legally married to his partner. The IJ thus did not find that there was no nexus between the proposed family social group and the harm.

Because neither the denial of asylum nor the denial of withholding is

6

supported by substantial evidence, I would grant the petition.

I respectfully dissent.