NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIAM ERNESTO BONILLA BONILLA; MARIA FERNANDA BONILLA-GARCIA, <br><br> Petitioners, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No. 23-2078 <br><br> Agency Nos. <br> A209-236-704 <br> A209-236-705 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 12, 2024[**]
San Francisco, California

Before: HIGGINSON[***], MENDOZA, and DESAI, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Stephen A. Higginson, United States Circuit Judge for the Court of Appeals, 5th Circuit, sitting by designation.

William Ernesto Bonilla Bonilla ("Bonilla") and his daughter, M.F.B.G.[1], natives and citizens of El Salvador, appeal a Board of Immigration Appeal's ("BIA") decision affirming an Immigration Judge's ("IJ") denial of asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The BIA found that Bonilla was ineligible for asylum and withholding of removal because he could not establish a valid protected ground. It also found that he was ineligible for CAT protection because his feared harm did not meet the definition of 'torture.'

We review the factual findings underlying the BIA's denial of asylum, withholding of removal, and CAT protection for substantial evidence. *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022); *Gutierrez-Alm v. Garland*, 62 F.4th 1186, 1199 (9th Cir. 2023); *Garcia-Milian v. Holder*, 755 F.3d 1026, 1031 (9th Cir. 2014). We have jurisdiction under 8 U.S.C. § 1252. We deny the petition.

1.      Substantial evidence supports the BIA's finding that Bonilla was ineligible for asylum and withholding of removal. To be eligible for asylum, the applicant must show that his race, religion, nationality, membership in a particular social group ("PSG"), or political opinion is "one central reason" for his past or feared future harm. *Barajas-Romero v. Lynch*, 846 F.3d 351, 358 (9th Cir. 2017). To be eligible for withholding of removal, the applicant must show that a protected

---

[1]      Bonilla is the lead petitioner in this case, and his daughter is a derivative applicant on his asylum application.

ground is "a reason" for his past or feared future harm. *Id.* Here, Bonilla petitioned for relief based on (1) his membership in a PSG and (2) an imputed political opinion.[2]

First, a valid PSG requires that: (1) the members share an immutable characteristic; (2) the group be defined with particularity; and (3) the group be socially distinct within the society at issue. *Diaz-Torres v. Barr*, 963 F.3d 976, 980 (9th Cir. 2020). Social distinction examines whether "the people of a given society would perceive a proposed group as sufficiently separate or distinct." *Id.* (quoting *Pirir-Boc v. Holder*, 750 F.3d 1077, 1084 (9th Cir. 2014)).

Bonilla proposed three PSGs: (1) "Salvadorans who are perceived as interlopers who travel from one gang-controlled area to another," (2) "Salvadorans who refuse to create a gang chapter in their local area and are perceived as political opponents," and (3) "Salvadorans who have opposed or resisted gang or criminal violence, recruitment, and/or extortion."[3] But nothing in the record suggests that El Salvadoran society views any of these groups as "separate or distinct," and thus, substantial evidence supports the conclusion that the PSGs lack social distinction.

---

[2] Bonilla also argues that he established past persecution and a well-founded fear of future persecution, but we only reach issues that the BIA relied on to deny asylum and withholding of removal. *See Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1075–76 (9th Cir. 2020).

[3] For the first time on appeal, Bonilla seems to propose additional PSGs, but we may not review their merits because the PSGs are unexhausted. *See Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023).

*See Conde Quevedo v. Barr*, 947 F.3d 1238, 1243 (9th Cir. 2020) (finding no social distinction where the record discussed the issue of gang violence generally but lacked society-specific evidence that the gang-related PSG was recognized as a distinct group).

Second, to establish a valid imputed political opinion, the applicant must show that his persecutors "actually imputed a political opinion to him." *Sangha v. INS*, 103 F.3d 1482, 1489 (9th Cir. 1997). But here, there is no evidence that the gang members attributed a political opinion to Bonilla or acted against him based on a political view. *See Garcia-Milan v. Holder*, 755 F.3d 1026, 1031–32 (9th Cir. 2014). Indeed, Bonilla testified that during both encounters with the gang, they threatened him because he refused to join them. Thus, substantial evidence supports the BIA's finding that Bonilla failed to establish an imputed political opinion.

2.    Substantial evidence also supports the BIA's finding that Bonilla was ineligible for CAT protection because his feared harm failed to meet the definition of 'torture.' To be eligible for CAT protection, the applicant must show that it is more likely than not that he would be tortured upon return to his country of removal. *Plancarte Sauceda*, 23 F.4th at 834. 'Torture' is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . punishing him . . . for an act he . . . has committed . . . when such pain or suffering is inflicted by, or at the instigation of, or with the consent or

acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." *De Leon Lopez v. Garland*, 51 F.4th 992, 1004 (9th Cir. 2022) (quoting 8 C.F.R. § 1208.18(a)(1)).

Here, Bonilla's colleagues in El Salvador had heard that the gang was still "looking for him," and Bonilla believed that he would be killed by gang members if he returned to El Salvador. But the record does not compel the conclusion that the El Salvadorean officials would consent or acquiesce to Bonilla's feared harm. *See Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011) (holding that acquiescence "requires only that [government officials] were aware of the torture but 'remained willfully blind to it, or simply stood by because of their inability or unwillingness to oppose it'" (quoting *Bromfield v. Mukaskey*, 543 F. 3d 1071, 1074 (9th Cir. 2008))); *Hernandez v. Garland*, 52 F.4th 757, 770 (9th Cir. 2022) (finding that a government's general ineffectiveness to investigate or prevent crime does not show acquiescence).

**DENIED.**