NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 22 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CRISTIAN ALBERTO TREJO-CAMPOS,

Petitioner,

v.

PAMELA BONDI, Attorney General,

Respondent.

No. 24-3901

Agency No. A206-161-248

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 20, 2025[**]
Seattle, Washington

Before: GOULD, TALLMAN, and CHRISTEN, Circuit Judges.

Cristian Alberto Trejo-Campos ("Petitioner"), a native and citizen of El

Salvador, petitions for review of the decision of the Board of Immigration Appeals

("BIA") affirming the Immigration Judge's ("IJ") denial of his application for

deferral of removal under the Convention Against Torture ("CAT"). Petitioner also

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

appeals the BIA's affirmance of the IJ's decision to afford limited weight to Petitioner's expert witness testimony, which Petitioner argues was a violation of Due Process. We have jurisdiction to review the petition under 8 U.S.C. § 1252, and we deny on both grounds.

1. Substantial evidence supports the BIA's determination that Petitioner failed to establish that he "is more likely than not" to be tortured upon removal to El Salvador, or that any such torture would be inflicted by, or with the consent or acquiescence of, the Salvadoran government. 8 C.F.R. § 1208.16(c)(2)–(3).

First, the IJ and BIA reasonably determined that being detained and subjected to the poor prison conditions reflected in the record evidence does not rise to the "extreme form of cruel and inhuman treatment" constituting torture.[1] *Id.* § 1208.18(a)(2); *see Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 706 (9th Cir. 2022). Petitioner argues that the BIA erroneously applied the "clear error" standard of review to this question when it should have reviewed de novo. Petitioner points out that the BIA's statement mirrors the language that warranted remand in *Umana-Escobar v. Garland*. *See* 69 F.4th 544, 552 (9th Cir. 2023) ("[T]he BIA stated that it reviewed the IJ's nexus determination for clear error: '[T]here is no clear error in

---

[1] Because this holding is dispositive of Petitioner's CAT claim on the basis of prison conditions, we do not decide whether substantial evidence supports the BIA's additional determination that even if these conditions were found to be tortuous, there is insufficient evidence to show that the government is creating or maintaining these conditions with the intent to torture.

the Immigration Judge's determination that [Umana-Escobar] did not establish the requisite nexus between a protected ground . . . and the harm he fears in El Salvador.'" (alterations in original)).

However, this case is distinguishable because, here, there *is* "[]sufficient indication from the rest of the BIA decision that the BIA's clear error review pertained to the IJ's factual determinations . . . as opposed to the ultimate [legal] determination." *Id.* at 552–53. The BIA recited the correct standards of review before proceeding with its analysis. *See id.* at 551. Then, the BIA correctly applied a de novo standard to the question of whether Petitioner's evidence of prison conditions (facts found by the IJ) rose to the legal standard of torture. We hold that the BIA "knew and applied the correct" legal standards. *See id.*

Second, substantial evidence supports the BIA's determination that Petitioner failed to show that, beyond generalized prison conditions, he is more likely than not to be tortured by a prison official. The IJ considered evidence that, of the nearly 74,000 Salvadoran prisoners, at least some of the 153 reported in-custody deaths have likely been due to torture. However, the IJ is correct that this does not quantitatively establish that Petitioner is "more likely than not" to be tortured. 8 C.F.R. § 1208.16(c)(2)–(3); *see Tzompantzi-Salazar*, 32 F.4th at 706 (holding that "generalized evidence would need to show" that the risk of torture is great enough such that over half of the subject population is at risk); *Benedicto v. Garland*, 12 F.4th 1049, 1064–65 (9th Cir. 2021) (same). And as the IJ explained, even

accounting for unreported instances of torture, there would have to be an "inordinate number" of unreported incidents to reach the over-fifty-percent threshold, which the IJ reasonably determined was "highly unlikely and improbable."

Petitioner argues that the IJ and BIA erred by basing this conclusion only on reported instances of *death* by torture, and ignoring evidence of torture that did not result in death. But the IJ did consider non-fatal instances of torture in its determination. And the BIA addressed Petitioner's argument in reasoning that, "[t]he [Petitioner's] disagreement with the Immigration Judge's view of the evidence is insufficient to show clear error in the factual findings supporting the Immigration Judge's determination." (citing *Don v. Gonzales*, 476 F.3d 738, 744 (9th Cir. 2007) (explaining that an IJ is not required to "interpret the evidence in the manner advocated by" the petitioner)). Further, Petitioner does not explain how any additional consideration of non-fatal torture would compel the contrary conclusion that this evidence quantitatively establishes that Petitioner is more likely than not to be tortured. *See Umana-Escobar*, 69 F.4th at 553; *Garcia v. Wilkinson*, 988 F.3d 1136, 1148 (9th Cir. 2021).

Finally, substantial evidence supports the BIA's determination that Petitioner failed to establish that the Salvadoran government would consent or acquiesce in any potential torture by gang members inflicted inside or outside of the prison. 8 C.F.R. § 1208.18(a)(1), (7). The IJ reasonably found that there is insufficient evidence that gang members are able to harm each other in prison under the strict

conditions of the state of exception. The IJ also reasonably found that there is no reliable evidence that any such harm, even assuming it amounted to torture, would be with the consent or acquiescence of the government. While Petitioner's expert opined that government officials are colluding with high-level gang members to "sacrifice" low-level gang members, the IJ reasonably found that this opinion is based on speculation without corroborating evidence. Alternatively, assuming Petitioner is subjected to harm from gang members *outside* of prison, the IJ reasonably found that there is insufficient evidence that the government would consent or acquiesce in any such harm.

2. The BIA did not err in determining that the IJ's decision to afford limited weight to Petitioner's expert witness did not violate Due Process. The IJ found Dr. Godoy to be a qualified expert on human rights and violence in El Salvador, accepted her report as evidence, and allowed her to testify. The IJ adopted facts consistent with her explanation of the state of exception under the current administration and her assessment that Petitioner is likely to be detained upon re-entry. *See Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011) (stating that the agency must give "reasoned consideration" to relevant evidence).

However, the IJ reasonably concluded that Dr. Godoy is not an expert in "assessing the likelihood of future torture that [Petitioner] would face in El Salvador." The IJ explained that, "given her own admissions that it has become increasingly difficult for her to conduct research in El Salvador," Dr. Godoy's

testimony was primarily based on information received from her contacts with journalists, human rights lawyers, and other activists who did not testify. While one organization was identified, the other sources were not.

As such, the IJ reasonably concluded that it could not "rely on secondhand hearsay as expert testimony because it is not sufficiently trustworthy, seeing as though none of those sources were available to testify." And because the IJ also could not determine whether other experts in the field would "rely on similar reports from these contacts," the IJ reasonably afforded some of Dr. Godoy's testimony limited weight, including the likelihood that Petitioner would be subject to torture upon his return to El Salvador. *See* 8 C.F.R. § 1240.1(c) (stating that IJs have broad discretion to admit and consider material and relevant evidence). Thus, the IJ did not err in affording the testimony less than full weight. *See Aguilar-Ramos v. Holder*, 594 F.3d 701, 706 n.7 (9th Cir. 2010) (explaining that the agency is "not required to adopt as true all of the facts on which" the expert bases their opinion, nor is the agency "required to find that [an expert's] unrebutted testimony made it more likely than not" that the petitioner will be tortured).

**PETITION DENIED.**[2]

---

[2] The Motion to Stay Removal [Dkt. 2] and the Supplemental Motion to Stay Renewal [Dkt. 14] are DENIED effective upon issuance of the mandate from this Court.