NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 4 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| WEVERTON RONAN VIDAL DA SILVA; L. K. A. V.; L. S. A. V.; LARISSA DA SILVA ARAUJO, | No. 25-2492 |
| Petitioners, | Agency Nos. A245-392-218 A245-392-221 A245-392-224 |
| v. | A245-392-226 |
| PAMELA BONDI, Attorney General, | |
| Respondent. | MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 2, 2026[**]
San Francisco, California

Before: S.R. THOMAS and GOULD, Circuit Judges, and MORRIS, Chief District
Judge.[***]

Weverton Ronan Vidal Da Silva, collectively with his wife and minor

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision
without oral argument.  See Fed. R. App. P. 34(a)(2).

[***]      The Honorable Brian Morris, United States Chief District Judge for
the District of Montana, sitting by designation.

children, natives and citizens of Brazil, petition for review of a decision of the Board of Immigration Appeals ("BIA") dismissing Vidal Da Silva's appeal of an order by an Immigration Judge ("IJ") denying asylum and withholding of removal.[1]

The BIA affirmed the IJ's findings, agreeing that Vidal Da Silva's testimony and statements were not credible. The BIA noted that the record lacked corroborating evidence of Vidal Da Silva's claims. The BIA further concluded that Vidal Da Silva failed to qualify for asylum or withholding of removal because Vidal Da Silva failed to establish a nexus between his feared harm and a protected ground and that the Brazilian government was unable or unwilling to protect him. The BIA particularly noted that the person of whom Vidal Da Silva feared had been arrested, charged, and convicted for killing Vidal Da Silva's brother.

Vidal Da Silva petitions for review of the BIA's decision. Vidal Da Silva argues that substantial evidence does not support the BIA's denial of his applications for asylum and withholding of removal. We have jurisdiction under 8 U.S.C. § 1252(a)(1) and deny the petition for review. Because the parties are familiar with the history of the case, we need not recount anything additional here.

---

[1] The Immigration Judge determined that Vidal Da Silva was not eligible for protection under the Convention Against Torture. Petitioner has not challenged that determination on appeal to the BIA nor on petition to this Court.

We apply the highly deferential "substantial evidence" standard to the agency's findings of fact. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1031 (9th Cir. 2014). The agency's findings of fact are considered "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). When "the BIA issues its own decision but relies in part on the [IJ's] reasoning, we review both decisions." *Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 702 (9th Cir. 2022) (quoting *Flores-Lopez v. Holder*, 685 F.3d 857, 861 (9th Cir. 2012)).

1. To establish eligibility for asylum and withholding of removal, Vidal Da Silva must show a nexus between past or feared future persecution and a statutorily protected ground of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i), 1231(b)(3)(A); *Melkonian v. Ashcroft*, 320 F.3d 1061, 1064 (9th Cir. 2003). The nexus requirement for eligibility of asylum and withholding of removal requires Vidal Da Silva to establish that his protected ground was or would be "a reason" for the harm. *Barajas-Romero v. Lynch*, 846 F. 3d 351, 360 (9th Cir. 2017).

Although Petitioner argued he was targeted on account of his political opinion or status as a member of a particular social group, substantial evidence supports the BIA's decision that Vidal Da Silva failed to establish that a nexus existed between any past or future harm and his proposed particular social groups

3

of "relatives of Welberth Rodrigo," and "individuals who were informant/witnesses with the authorities in the investigation and arrest of a member of the Red Command." Vidal Da Silva testified that he left Brazil out of tiredness from the retaliation that he faced for allegedly supporting the investigation of his brother's murder. Vidal Da Silva declared that the men who stole his motorcycle warned him about future retaliation from the criminal group Comando Vermelho. Vidal Da Silva similarly declared that he faced constant threats to his life as reprisal for his involvement in apprehending his brother's murderer. *Id*. Furthermore, Vidal Da Silva never testified to a political opinion of which the Comando Vermelho targeted him for maintaining. The record fails to support the conclusion that Vidal Da Silva was targeted "on the account of" his membership in a proposed particular social group or that his membership was "a reason" for the harm he experienced. *Barajas-Romero*, 846 F. 3d at 360. Asylum and withholding of removal remain unavailable for claims involving personal retribution or animosity. *See Madrigal v. Holder*, 716 F.3d 499, 506 (9th Cir. 2013) ("[M]istreatment motivated purely by personal retribution will not give rise to a valid asylum claim.").

The record supports the conclusion that the Comando Vermelho targeted Vidal Da Silva out of retaliation for his alleged participation in identifying his brother's murderer. Vidal Da Silva fails to meet his burden to establish eligibility

4

either for asylum or withholding of removal because the record demonstrates that the Comando Vermelho member's "death threats are grounded only in personal animosity" against Vidal Da Silva. *Zayas-Marini v. INS*, 785 F.2d 801, 806 (9th Cir. 1986). This conclusion is dispositive to Vidal Da Silva's claims for asylum and withholding of removal. *See Umana-Escobar v. Garland*, 69 F.4th 544, 551 (9th Cir. 2023) (as amended) ("A nexus between the harm and a protected ground is a necessary element of asylum and withholding of removal.").

2. Substantial evidence further supports the BIA's decision that Vidal Da Silva failed to show that the Brazilian government was unable or unwilling to protect him from the person who murdered his brother. Vidal Da Silva has the burden of establishing that his alleged "persecution was [or would be] committed. . . by forces that the government was unable or unwilling to control." *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017) (en banc) (quoting *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010). The inquiry does not require a government to "prevent *all* risk of harm." *Hussain v. Rosen*, 985 F.3d 634, 648 (9th Cir. 2021). A court must consider "all relevant evidence in the record, including country reports," when assessing "whether private persecutors are individuals whom the government is unable or unwilling to control." *Bringas-Rodriguez*, 850 F.3d at 1069 (citation modified).

5

Vidal Da Silva fails to establish that he would be harmed by a Brazilian government actor or persons the Brazilian government was unable or unwilling to control. Vidal Da Silva feared the person he allegedly identified as killing his brother. The Brazilian government has charged and convicted that person for the murder of Vidal Da Silva's brother. The record shows that that person is still in custody. Vidal Da Silva reported the threats he received after two men stole his motorcycle. The Brazilian police acknowledged Vidal Da Silva's concerns for his safety by taking his reports even if the reports failed to lead to any arrests.

Vidal Da Silva further fails to satisfy his burden of showing that the Brazilian police were unable or unwilling to protect him. A petitioner cannot satisfy his burden by "simply" demonstrating that "the police ultimately were unable to solve a crime or arrest the perpetrators, where the [petitioner] failed to provide the police with sufficiently specific information to permit an investigation or an arrest." *Doe v. Holder*, 736 F.3d 871, 878 (9th Cir. 2013). Vidal Da Silva had informed the Brazilian police that he could not identify the men who stole his motorcycle as their heads were "covered." Vidal Da Silva later reported a robbery of his home, but he had not been present for the robbery. Based on the record, Vidal Da Silva cannot demonstrate that the Brazilian government was unable or unwilling to protect him because the Brazilian police lacked sufficient information to execute an arrest for the crimes. *See id.*

6

The record fails to compel the conclusion that the government was unwilling or unable to protect Vidal Da Silva when his brother's assailant was arrested, charged, and convicted by the Brazilian government. The Court similarly concluded in *Velasquez-Gaspar v. Barr* that a petitioner failed to meet her burden of proof where country reports proved mixed on the country's effectiveness in addressing the petitioner's harm while her friends encouraged her to seek police protection. 976 F.3d 1062, 1064–65 (9th Cir. 2020). The facts here also "suggest" that Vidal Da Silva "could have obtained help" from Brazilian authorities. *Id.* This conclusion also proves independently dispositive to Vidal Da Silva's claims for asylum and withholding of removal. *See Plancarte Sauceda v. Garland*, 23 F.4th 824, 832 (9th Cir. 2022) (as amended); *see also Meza-Vazquez v. Garland*, 993 F.3d 726, 729 (9th Cir. 2021).

3. The Court need not reach a conclusion on whether substantial evidence supports the BIA's adverse credibility determination. Vidal Da Silva has failed to demonstrate "a nexus between the harm and a protected ground," *see Umana-Escobar*, 69 F.4th at 551, and that the Brazilian government was unable or unwilling to protect him. *Bringas-Rodriguez*, 850 F.3d at 1062; *see also INS v. Bagamasbad*, 429 U.S. 24, 25–26 (1976).

7

**PETITION DENIED.**[2]

---

[2] The motion for a stay of removal (Dkt. No. 3) is denied. The temporary stay of removal is lifted.